## KING *v.* STATE.

Opinion delivered January 13, 1913.

1. WITNESS—CROSS EXAMINATION.—On cross examination a witness may be asked questions relating to specific acts and facts immediately related to the subject under inquiry, which affect the credibility of the witness, and a trial court in a trial for carnal knowledge, should permit the prosecutrix, on cross examination, to answer the question: "Is this young man, King, the only young man whom you ever had sexual intercourse with?" (Page 162.)

2. APPEAL AND ERROR.—PREJUDICIAL ERROR.—Unless it affirmatively appears that the defendant believed that the witness would make an admission favorable to his defense, if she answered the question truthfully, no prejudice results to him by reason of the act of the court in refusing to permit the question to be answered. (Page 165.)

Appeal from Sevier Circuit Court; *Jeff T. Cowling*, Judge; affirmed.

No brief filed for appellant.

*Hal L. Norwood*, Attorney General, and *William H. Rector*, Assistant, for appellee.

The action of the trial court in refusing to require the prosecuting witness to answer the question whether or not she had ever had intercourse with any other man than the defendant, was correct. In a prosecution for carnal abuse the chastity of the prosecuting witness is not in issue, but if it were so, it would be improper to require her to testify to matters that would tend to incriminate or disgrace her. 15 Ark. 624; 93 Ark. 260.

SMITH, J. The defendant, who was a boy just past sixteen years of age, was indicted and convicted for the offense of carnally knowing one Esther Smith, a female under the age of sixteen years, and was given a sentence of two years in the penitentiary upon the verdict of the jury assessing his punishment at imprisonment for that time.

The appellant has not favored us with a brief, but the case has been fully abstracted by the Attorney General and the motion for a new trial set out in full in his brief. Three of the grounds for a new trial relate to the sufficiency of the evidence, but we think there was a sufficiency of legal evidence to sustain the verdict.

The only question raised by the motion for a new trial which we regard as of sufficient importance to discuss, was the refusal of the court to permit the prosecuting witness, Esther Smith, upon her cross examination to answer the question whether she had had sexual intercourse with men other than the defendant, the exact question and the ruling of the court being as follows:

Q. Is this young man, King, the only young man whom you ever had sexual intercourse with?

A. The court: "Don't answer that."

In our opinion, this question might have elicited competent evidence and the witness should have been permitted to answer the question in view of the circumstances of this case. The evidence of the girl tended to show that she was under the age of sixteen years; that defendant induced her to leave her home under the promise that he would go with her to Nashville and marry her, and she says she met the defendant in the woods and yielded to him and that he then left her, promising that he would later redeem this promise and assigned as his reason for not redeeming it at the time that he had promised his mother to be at home by 11 o'clock, and this excuse was apparently satisfactory, when he assured her he would later redeem his promise, which promise and offer had been made for the first time on the day before. The defendant denied that he had promised to marry the girl or that he had induced her to leave her home and denied having had sexual intercourse with her. The age of the girl was also questioned, but the verdict of the jury concludes all doubt upon that issue. The evidence tends to show that if there was a meeting between defendant and the girl, it was for the purpose of keeping an assignation, and not for the purpose of leaving home to be married to him. The answer to the question which was excluded by the court might have thrown some light upon the object of the meeting, and, if so, it would have been competent for the jury to have considered in determining the punishment to be imposed. While it would have been no defense that defendant was merely keeping an assignation, he would have been entitled to the benefit of any evidence which would have shown that he had committed no greater offense. Certainly in assessing the amount of punishment, a jury might consider and be influenced by the circumstances under which the meeting took place. If defendant had induced a virtuous, trusting girl to leave her home under the promise of marriage and had taken advantage of the circumstances in which

she was placed, by her reliance upon his promise, certainly he would have deserved a severer sentence than would a boy, who had met by appointment a girl not unacquainted with the object of the meeting. The lowest punishment for this offense is imprisonment for one year in the penitentiary, and the fact that defendant was given a sentence for twice that length of time indicates that prejudice to the defendant might have resulted from the exclusion of this question and answer, and the case would have to be reversed, if defendant was in position to show that prejudice resulted from the exclusion of the question.

Moreover, under the circumstances, the question asked the witness upon her cross examination was a proper one. The right of cross examination is not a privilege to turn the searchlight of inquiry upon all the indiscretions of a witness' past life, but it is a right which must be exercised within reasonable limitations and subject to some extent to control under the discretion of the trial judge. The question asked should have some immediate relation to the subject under inquiry and should be of such a nature as to show whether or not the witness was entitled to be believed. Such evidence is ordinarily called impeachment by cross examination, and when permissible for that purpose, the inquiry should relate to such subjects as would influence the judgment of an unbiased person, as a juror is supposed to be, in determining whether or not the witness is entitled to be believed and has probably told the truth upon the witness stand. When such questions relate to specific acts in the life of the witness, they should be confined to such matters, in point of time, as that a reasonable inference would likely flow from an admission, on the part of the witness, that he was not entitled to be believed, or that necessarily impared his credit.

For instance, in the case of *McAllister* v. *State,* 99 Ark. 604, the witness, Williams, was asked upon his cross examination if he and the defendant had assassinated a negro. In that case, the theory of the State was that the defendant, McAllister, in conjunction with the wit-

ness, Williams, had in fact assassinated a negro and the court held that this was a proper question because it was there contended that the defendant, McAllister, in conjunction with the witness, Williams, and another person had assasinated one Kirby, for whose murder the said McAllister was then on trial.

Opportunity and credit for reformation should be given to the witness, and if the instance, testified about, in point of time is so remote that of itself no inference of the want of credibility would flow, then it should be excluded on that account, and the turpitude involved in the act inquired about should be considered in determining the length of time back to which the inquiry might relate. As was said by Justice HEMINGWAY in the case of *Hollingsworth* v. *State,* 53 Ark. 387, a witness upon cross examination may be asked questions touching his recent residence, occupation, and association, and upon the authority of that case and the subsequent cases here cited, we announce the rule to be that in developing those questions, the witness upon cross examination may be asked as to specific acts, and facts. *Little Rock Vehicle Co.* v. *Roberson,* 75 Ark. 548; *McAllister* v. *State,* 99 Ark. 616; *Turner* v. *State,* 100 Ark. 202; *Ware* v. *State,* 91 Ark. 555.

So while ordinarily it would be the duty of the trial court to protect the witness from being asked questions which might not throw any light upon his present credibility, but would tend only to humiliate and embarrass him, still those questions must be permitted, even though they do humiliate and embarrass, if they relate to such specific acts as a jury would have a right to consider in passing upon the question of credibility. The distinction between the right to impeach upon cross examination and by proof of the general reputation is pointed out in the Hollingsworth case, *supra,* and need not be discussed here.

However, in this case, while the defendant asked the witness a question which we have just shown to be a proper one, he has not complied with the rules of this court to secure a reversal of the case on account of the

action of the trial judge in excluding the evidence. He made no attempt to show that the witness, if allowed to answer, would testify that she had had sexual intercourse with other men, nor does he state that he believes that she would have so testified, and unless it affirmatively appeared that the defendant believed that the witness would make an admission favorable to his defense, if she answered the question truthfully, no prejudice resulted to him from the action of the court. We can not reverse this case under the condition of the record, although the question excluded might have elicited competent evidence. *New Hampshire Insurance Co.* v. *Blakely,* 97 Ark. 564; *Meisenheimer* v. *State,* 73 Ark. 407; *Boland* v. *Stanley,* 88 Ark. 562; *Aetna Indemnity Co.* v. *Little Rock,* 89 Ark. 95; *Bryant* v. *State,* 95 Ark. 240; *Russell* v. *Brooks,* 92 Ark. 509.

This case is not in conflict with the case of *Renfroe* v. *State,* 84 Ark. 16, nor that of *Plunkett* v. *State,* 72 Ark. 409. The incontinency of the girl, alleged to have been carnally abused, was not sought to be shown in either of those cases upon her cross examination, but by the evidence of other witnesses.

In the Plunkett case, Mr. Justice Wood said: "The proffered testimony of various witnesses in behalf of appellant tending to prove that prosecutrix had sexual intercourse with some one other than appellant was immaterial. The character of the prosecutrix for chastity is not involved in a charge of this kind, as in cases of seduction. The only question in a charge of this kind is whether appellant had sexual intercourse with prosecutrix. The '*et tu*' defense does not obtain."

In the Renfroe case it is said in the syllabus: "In a prosecution for carnally knowing a female under age, evidence that other persons had sexual intercourse with her is inadmissible," but that statement is broader than the text of the opinion. What the court did there decide was that there was no abuse of discretion in overruling a motion for continuance on account of the absence of a witness, who would have sworn that he had had sexual intercourse with the prosecutrix in that case with her

full consent. Thus it is seen that the point decided in the two above cases is the same, that the incontinence of the prosecutrix may not be proved as an independent fact. It is a collateral matter and can be shown only upon cross examination of the prosecutrix. Being a collateral matter, the cross examination concludes the inquiry. Many cases in our own reports make plain the test as to when a matter is collateral; this test is clearly stated in the McAllister case *supra,* as follows: "The test of whether a fact inquired of in cross examination is collateral is this; would the cross examining party be entitled to prove it as a part of his case, tending to establish his plea."

The distinction between the Plunkett and Renfroe cases and this case is manifest.

Affirmed.