JOHN O. MAY *v.* STATE OF ARKANSAS

5796 492 S.W. 2d 888

Opinion delivered April 9, 1973
[As modified on denial of rehearing April 30, 1973.]

*Jack L. Lessenberry,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Frank B. Newell,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. J. O. May appeals from a conviction on a charge of inducing an abortion. It was the theory of the State that at the request of Kaye and Allan Kuykendall, Bill McCord, Jr. contacted Teresa Barrett who he had reason to believe could get in touch with someone who would perform an abortion. Teresa was said to have contacted appellant and arranged for the abortion. Kaye Kuykendall testified that the illegal act was committed on October 9, 1970, which happened to be appellant's birthday. Appellant's defense was an alibi. He, along with corroborating witnesses, testified that appellant was in DeValls Bluff celebrating his birthday. Those are about all the facts that are necessary to an understanding of the issues on appeal. Such additional facts as are pertinent to an understanding of any of the issues will be subsequently recited.

We shall first treat appellant's argument that our abortion statutes, Ark. Stat. Ann. §§ 41-303-310 (Supp. 1971) are unconstitutional in light of two recent decisions of the United States Supreme Court. *Doe v. Bolton, Attorney General of Georgia,* 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973); *Roe v. Wade, District Attorney of Dallas County,* 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). In both cases, *parts* of the abortion laws of the respective states were declared unconstitutional. In *Roe,* it was determined by the Court that a pregnant single woman had standing to attack the Texas statute; the plaintiffs in *Doe* were an indigent, married, pregnant Georgia citizen and certain licensed physicians, standing being conferred, so the Court held, on the latter through *Epperson* v. *Arkansas,* 393 U.S. 97 (1968). The most salient aspect of both cases (*Roe* and *Doe*) for the purposes of the appeal in the case at bar is that the decisions in both *Roe* and *Doe* contemplate the performance of abortions only by licensed physicians. In fact as to laymen, *Roe* makes the statement, in its summary under XI that a

state "may proscribe any abortion by a person who is not a physician". Our Ark. Stat. Ann. § 41-303 in effect prohibits abortions by two classes of people, physicians and laymen. The effect of the Supreme Court holdings was to strike down the prohibition as against physicians during the period preceding approximately the end of the first trimester. The cited section can be left intact as to laymen; that was the effect of our holding in *Borchert* v. *Scott*, 248 Ark. 1041, 460 S.W. 2d 28 (1970), where we said: "If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other". An abortion case in point in this respect is *Commonwealth* v. *Brunelle*, 277 N.E. 2d 826 (Mass. 1971).

The appellant has no standing to personally attack the constitutionality of § 41-303 because it is not unconstitutional as applied to him. As applied to appellant, § 41-303 simply prohibits a layman from performing or inducing an abortion. As we have pointed out, the United States Supreme Court says in *Doe* and *Roe* that the states have a right to prohibit such activity by one other than a physician. In *Brunelle, supra,* the standing of the accused to attack the statute as unconstitutional was brought into question and his standing to make that attack was denied because Brunelle was not a licensed physician. The court said: "Only persons whose interests are affected by a statute may assert that it is unconstitutional".

We are compelled to reverse and remand for new trial, principally because appellant was denied the right to attack the credibility of some of the State's key witnesses on the grounds of certain acts of moral turpitude. For example, appellant sought to elicit from Mrs. Kuykendall the fact that she had sexual relations with another witness, Bill McCord, Jr., while she was married to Allan Kuykendall. (Mrs. Kuykendall admitted the act in her testimony in chambers). Appellant also sought to elicit on cross-examination of Bill McCord, Jr., a State witness, that McCord had been found in an alley suffering from the effects of drugs. On cross-examination the credibility of a witness may be impeached by showing acts of moral turpitude. *Hale* v. *State*, 252 Ark. 1040, 483 S.W. 2d 228 (1972); *Heath* v. *State*, 249 Ark. 217, 459 S.W. 2d 420

(1970). Still more in point are such cases as *Garrard* v. *State,* 113 Ark. 598, 167 S.W. 485 (1914), intercourse with other men; *Rowe* v. *State,* 155 Ark. 419, 244 S.W. 463 (1922), intercourse with others; *Schooley* v. *State,* 176 Ark. 895; 2 S.W. 2d 67 (1928) immoral acts.

Several other points for reversal are advanced. Some of those will not arise on retrial; others have no merit; and some present situations in which a timely record was not made.

Reversed and remanded.

BYRD, J., dissents in part.

CONLEY BYRD, Justice, dissenting. I disagree with so much of the majority opinion that holds that appellant, a layman, has no standing to attack the constitutionality of our abortion Statute, Ark. Stat. Ann. § 41-303 (Supp. 1971). That statute provides:

"It shall be unlawful for any one to administer or prescribe any medicine or drugs to any woman with child, with the intent to produce an abortion, or premature delivery of any foetus before or after the period of quickening, or to produce or attempt to produce such abortion by any other means; and any person offending against the provisions of this Section shall be fined in any sum not to exceed one thousand dollars ($1,000.00), and imprisoned in the penitentiary not less than (1) nor more than [5] years."

The Texas statute involved in *Roe* v. *Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), provided:

"Article 1191. Abortion

"If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or intermally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; if it

be done without her consent, the punishment shall be doubled. By 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused."

. . .

"Article 1196. By medical advice

"Nothing in this chapter applies to an abortion procured or attempted by medical advice for the purpose of saving the life of the mother."

Justice Blackmun in delivering the majority opinion stated:

"Our conclusion that Art. 1196 is unconstitutional means, of course, that the Texas abortion statutes, as a unit, must fall. The exception of Art. 1196 cannot be stricken separately, for then the State is left with a statute proscribing all abortion procedures no matter how urgent the case."

I can find nothing in *Borchert v. Scott,* 248 Ark. 1050-H, 460 S.W. 2d 28 (1970), to support the majority position here. There the issue was whether the act was severable and the matter was stated in this language:

"When this case was before us on direct appeal we held the Documentary Tax Stamp Act, being Act 239 of 1969, unconstitutional and void under Amendment 20 to the Constitution of Arkansas. *Borchert v. Scott, et al,* 248 Ark. 1041, 460 S.W. 2d 28 (1970). We have again considered the case on rehearing and have concluded that the Act is severable and that portions of it are constitutional and valid. In reappraising the intent of the legislature in enacting Act 239, we conclude that we cannot say the legislature would not have passed Act 239 without § 6 or subsections (b), (2) and (3) written. . . ."

Here, Ark. Stat. Ann. § 41-303 provides that, "any person offending against the provisions of this Section shall be fined in any sum not to exceed one thousand

dollars ($1,000.00), and imprisoned in the penitentiary not less than (1) nor more than [5] years." The first portion thereof makes it unlawful "for anyone . . . to produce an abortion." No exception is made for any physician and as pointed out in *Roe* v. *Wade, supra,* it appears to me that the statute, *as a unit,* must fall with its unconstitutionality.

Our statute as written makes no distinction as to the occupations of persons prohibited. Thus, it appears to me that appellant has a standing to complain that the statute is being unequally applied to him when it cannot be validly applied to other persons within the class that is prohibited.

For the reasons stated, I respectfully dissent to that portion of the opinion upholding the validity of the statute.