## Commonwealth *v.* Jackson, Appellant.

Submitted September 24, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*James R. Fitzgerald,* for appellant.

No brief submitted for appellee.

OPINION PER CURIAM, November 26, 1973:

The appellant, Augustine Jackson, was convicted by a jury in Allegheny County of committing an unlawful abortion in violation of Sections 718 and 719 of the Act of June 24, 1939, P. L. 872, 18 P.S. §§4718-4719. A prison sentence was imposed and Jackson filed an appeal therefrom in the Superior Court.[1] Because other appeals were then pending in this Court involving the identical issue, the Superior Court certified Jackson's appeal here.

The conviction and judgment of sentence must be reversed. See *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705 (1973), and *Commonwealth v. Page*, 451 Pa. 331, 303 A.2d 215 (1973).

It is so ordered.

---

[1] The trial court stayed execution of the sentence pending appeal.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am compelled to dissent from the majority's reversal of appellant's conviction. Because this case does not involve the right of a woman to obtain an abortion by a licensed physician, appellant's conduct in aborting another's pregnancy was properly punishable under sections 718 and 719 of the Act of June 24, 1939, P. L. 872, 18 P.S. App. §§4718-19 (1973). In my view, these sections continue to prohibit all persons other than licensed physicians from performing abortions.[1]

---

[1] The United States Supreme Court recently denied certiorari in *May v. State*, 254 Ark. 194, 492 S.W.2d 888, cert. denied, 414 U.S. 1024, 94 S. Ct. 448 (1973). There the Arkansas Supreme Court likewise construed its abortion statute to continue to prohibit abortions by non-physicians. This conclusion has also been reached by several other jurisdictions. E.g., *People v. Barksdale*, 8 Cal. 3d 320, 503 P.2d 257, 105 Cal. Rptr. 1 (1972); *People v. Norton*, 181 Colo. 47, 507 P.2d 862 (1973); *People v. Bricker*, 389 Mich. 524, 208 N.W.2d 172 (1973); *Spears v. State*, 278 So. 2d 443 (Miss. 1973); *State v. Strance*, 84 N.M. 670, 506 P.2d 1217 (1973).

Nothing to the contrary appears in *Roe v. Wade,* 410 U.S. 113, 93 S. Ct. 705 (1973), or *Doe v. Bolton,* 410 U.S. 179, 93 S. Ct. 739 (1973).[2]

In the instant case, appellant is not a licensed physician. Nevertheless, in June 1965, she attempted to abort the pregnancy of Georgia Carter. Appellant performed the abortion in her private residence and in the absence of safe procedures or sanitary conditions. As a result, the abortion terminated not only Georgia Carter's pregnancy, but her life as well.

In *Roe v. Wade,* the United States Supreme Court sought to harmonize important, but conflicting societal interests. A woman's decision to terminate her pregnancy was found to be included within a constitutional right of privacy.[3] But her decision and that right

---

[2] In *Commonwealth v. Page,* 451 Pa. 331, 336, 303 A.2d 215, 217 (1973), the language that declared sections 718 and 719 of the Act of June 24, 1939, P. L. 872, 18 P.S. App. §§4718-19 (1973), "unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment" did not command the support of a majority of this Court. The opinion of Mr. Chief Justice JONES was joined only by Mr. Justice POMEROY. That opinion announced the judgment of the Court. Mr. Justice EAGEN wrote a concurring opinion in which Mr. Chief Justice JONES and Mr. Justice O'BRIEN joined. Mr. MANDERINO concurred in the result. Mr. Justice NIX and this writer filed separate dissenting opinions.

[3] The United States Supreme Court did not specify upon which constitutional provision this right of privacy rested. The majority intimated that authority for a right of privacy could most likely be found in the Fourteenth Amendment's concepts of liberty and restrictions on state power. It failed to preclude the possibility that the Ninth Amendment's reservation of rights to the people furnished support for a privacy right. Indeed, the Court did not reject as possible bases for the right, the First Amendment, Fourth Amendment, Fifth Amendment, or the penumbras of the Bill of Rights. *Roe v. Wade,* 410 U.S. 113, 152-54, 93 S. Ct. 705, 726-27 (1973). However, the Court believed that "only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' Palko v. Connecticut, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288 (1937), are included in this guarantee of personal privacy." *Id.* at 152, 93 S. Ct. at 726.

could not be unrestrictedly exercised. Qualifying this right of privacy were the valid state interests in safeguarding the life of the mother, ensuring proper medical practice, and protecting potential human life. Mr. Justice BLACKMAN, speaking for the Court, emphasized that "[t]he State has a legitimate interest in seeing to it that abortion, like any other medical procedure, is performed under circumstances that insure maximum safety for the patient. This interest obviously extends at least to the performing physician and his staff, to the facilities involved, to the availability of after-care, and to adequate provision for any complication or emergency that might arise. The prevalence of high mortality rates at illegal 'abortion mills' strengthens, rather than weakens, the State's interest in regulating the conditions under which abortions are performed." *Roe v. Wade,* supra at 150, 93 S. Ct. at 725. From this it appears without doubt that the Commonwealth has the power constitutionally to proscribe abortions performed by non-physicians.

A reading of *Wade's* companion case, *Doe v. Bolton,* reveals that the major constitutional concern of the Supreme Court was undue state interference with the patient-physician relationship. In *Doe v. Bolton,* the Court struck down a Georgia statute requiring, inter alia, before a woman could procure an abortion, that her physician's decision to abort receive both the approval of a hospital committee, and, after independent examination, the concurrence of two other physicians. With respect to committee approval, the Supreme Court concluded that "[t]he woman's right to receive medical care in accordance with her licensed physician's best judgment and the physician's right to administer it are substantially limited by this statutorily imposed overview." 410 U.S. at 197, 93 S. Ct. at 750. The majority likewise believed that the licensing of a physician carried with it a recognition of his ability to render accept-

able medical advice. "Required acquiescence by co-practitioners has no rational connection with a patient's needs and unduly infringes on the physician's right to practice." Id. at 199, 93 S. Ct. at 751. Prohibiting non-licensed physicians, like appellant, from performing abortions certainly does not intrude upon a woman's right of privacy or upon the patient-physician relationship.

It cannot be denied that the Constitution permits "[t]he State [to] define the term 'physician,' . . . to mean only a physician currently licensed by the State, and [to] proscribe any abortion by a person who is not a physician as so defined." *Roe v. Wade,* supra at 165, 93 S. Ct. at 732-33. In *Page* the two justices who joined the opinion announcing the judgment of the Court did not limit sections 718 and 719 to cover abortions not performed by licensed physicians, but instead opined that the Commonwealth could proceed against non-physicians "for the lay practice of gynecology and obstetrics."[4]

In my view, a prosecution for the unlicensed practice of medicine does not adequately vindicate society's interest in safeguarding the health and life of a woman desiring to terminate her pregnancy. Only a complete prohibition of abortions performed by anyone other than a licensed physician will be effective in preventing the deaths of other Georgia Carters and the human suffering caused by illegal abortions.

Sections 718 and 719 are unconstitutional only to the extent they are inconsistent with the holding of the United States Supreme Court in *Roe v. Wade.*[5] To the

---

[4] *Commonwealth v. Page,* 451 Pa. 331, 337 n.10, 303 A.2d 215, 218 n.9 (1973). See Act of June 3, 1911, P.L. 639, §2, as amended, 63 P.S. §401a (1968).

[5] Sections 718 and 719 of the Act of June 24, 1939, P.L. 872, 18 P.S. App. §§4718-19 (1973), have not been repealed by the Legislature. Although they were not codified by the Act of November 25, 1970, P. L. 707, §1, they were expressly saved from repeal. Id. §5.

extent these two sections proscribe a non-physician from performing an abortion, they are constitutional.

Accordingly, I would affirm the judgment of sentence of the Court of Common Pleas of Allegheny County.

Mr. Justice O'BRIEN and Mr. Justice NIX join in this dissenting opinion.